# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

ANTHONY THORNTON, )
)
          Plaintiff, )    Case  No. EDCV 08-999 AJW
)
         v. )    MEMORANDUM OF DECISION
)
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
)
         Defendant. )
_____)

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

## Background

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. Plaintiff filed an application for SSI benefits on August 1, 2003, alleging that he became disabled on December 1, 2001. Following an administrative hearing in October 2006, an administrative law judge ("ALJ") issued a partially favorable decision finding plaintiff disabled beginning on September 1, 2005. In the process of calculating plaintiff's SSI benefits, a determination was made that plaintiff was cohabiting with his wife during the period from September 1, 2005 through January 31, 2007,

1    and that her income rendered plaintiff ineligible to receive SSI benefits during  that period. See 20 C.F.R.

2    § 416.1100-1160 (setting forth income and other eligibility requirements for SSI benefits). After plaintiff's

3    request for reconsideration was denied, plaintiff requested and received an administrative hearing before

4    a different ALJ.  Plaintiff appeared during the hearing without a representative and testified in his own

5    behalf. [AR 160-190].

6          In a written hearing decision dated May 25, 2007, the ALJ found that (1) plaintiff lived with his wife,

7    Patricia Thornton, from September 1, 2005 through January 31, 2007; (2) Ms. Thornton's income was

8    "deemed to [plaintiff] during the relevant time frame"; (3) plaintiff "was not a credible witness for the

9    reasons set forth in this decision"; and (4) Ms. Thornton's income rendered plaintiff ineligible for SSI

10   benefits from September 1, 2005 through January 31, 2007. [AR 17]. The Appeals Council granted

11   plaintiff's request for review and issued a new decision.  The Appeals Council incorporated by reference

12   the ALJ's evaluation of the evidence and findings, discussed additional evidence, and, like the ALJ, found

13   that Ms. Thornton's income was "deemed to [plaintiff]" and rendered him ineligible for SSI benefits during

14   the period from September 1, 2005 through January 31, 2007. [See JS 2; AR 9-10, 14-18, 157-159].

15                                     **Standard of Review**

16         The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

17   evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

18   2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

19   a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

20   2005).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

21   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is

22   required to review the record as a whole and to consider evidence detracting from the decision as well as

23   evidence supporting the decision.  Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

24   Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than

25   one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

26   Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th

27   Cir.1999)).

28   ///

**Discussion**

**Credibility evaluation**

Plaintiff contends that the ALJ improperly rejected his testimony that he did not live with his wife during the relevant period. [See JS 3-11].

In a section of his decision incorporated into the Appeals Council's decision, the ALJ wrote that plaintiff

testified he began receiving [SSI benefits] in March 2007.  He stated that he has not lived in his wife's house at 15058 Bonanza Road in Victorville, CA; he has just used her address as his mailing address. He also used her father's address . . . as a mailing address.  He has lived with a friend in a trailer, and he has lived in his van.  Using his wife's address and her father's address was more convenient for the claimant in order to receive mail and pick up his children.  The claimant has lived in his van, on and off for 18 years. . . .

The claimant further testified that he is not divorced from Patricia [Thornton], but she left him in 1991 and filed for divorce.  The claimant did not respond to the divorce papers, and both of them thought they were divorced until 2002. The claimant said Patricia never asked for a default. . . . The claimant made out divorce papers in 2004, but he did not file them until 2007.  The claimant went to court in 2006 to have his child support payments stopped. The claimant told the judge he had moved back home with Patricia, but he did not.  He said he had requested Patricia appear with him at the [social security] hearing, but she did not want to take time off from work.

[AR 15-16].

The ALJ concluded that plaintiff was not a credible witness.  He observed that plaintiff told Judge Anderson, the state court judge presiding over plaintiff's child support hearing, that

he was living with his wife and their minor child in the same home.  The claimant either told the truth when he said they resided in the same home; or he committed perjury – a crime in itself – or made a material representation to a state [court] judge so that he would not have to make child support payments.  The child support agreement was modified based on the claimant's now alleged misrepresentations.

[AR 16].

The ALJ cited other substantial evidence that either was inconsistent with plaintiff's testimony or failed to corroborate it. First, the ALJ observed that plaintiff "submitted numerous documents showing that his address was different from" Patricia Thornton's address, but all of those documents predated plaintiff's established onset date of September 1, 2005, and thus did not show where he lived during the relevant period. [AR 16].

Second, the ALJ noted that "for the years 2004, 2005, and 2006, the claimant's name was listed in the phone book as the primary resident at his wife's address." [AR 16 (citing AR 106-108)]. Plaintiff testified that his name appeared in the telephone directory under his wife's address because he had a phone and cable access installed there for his children while he continued to reside in his van, but that the phone line had been disconnected since 2004. [See AR 106-110, 175-178] When the ALJ asked him for documentation showing that the phone had been disconnected, plaintiff said he had none, and he could not explain to the ALJ why the phone company would list a disconnected number in its own directory. [AR 177-178].

Third, the ALJ noted that plaintiff submitted a January 19, 2007 rental agreement between plaintiff and Lenora Watson, along with a February 2007 letter from Ms. Watson stating that plaintiff was living in his van in her back yard. The ALJ concluded that evidence was not material because plaintiff already had been found to be living apart from Ms. Thornton, and to be eligible for SSI benefits, after January 31, 2007. [AR 17].

Fourth, the ALJ noted that plaintiff was still married to Ms. Thornton during the relevant period, and that a petition to dissolve his marriage to Ms. Thornton was filed on January 25, 2007 in San Bernardino County Superior Court. [AR 17, 83-84]. Plaintiff testified that he prepared divorce papers in 2004 but did not file them, and later used the fact of his marriage to his benefit when he sought to terminate his child support payments on the ground he was still married and had resumed living with his wife. [AR 185-186].

In addition to incorporating the ALJ's rationale, the Appeals Council quoted a November 2, 2006 minute order issued by San Bernardino County Superior Court terminating "the requirement that Anthony Thornton [claimant] pay child support because 'the family is intact and residing in the same home.'" [AR 10, 156].

4

The ALJ acknowledged that Ms. Thornton submitted a letter dated May 10, 2007 stating that plaintiff had "lived separately from myself for more than ten years since filing for divorce," and she had "provided occassional [sic] care and assistance to [plaintiff] during periods in which he was unable to care for himself as in times following surgeries." [AR 112]. Ms. Thornton did not specify the frequency or duration of the periods she said she gave plaintiff care and assistance. The ALJ said that he found Ms. Thornton's letter unconvincing because there was no independent documentation that plaintiff lived separately from her during the relevant time frame. [AR 17].

In determining whether an SSI claimant "has spent or retained excess resources, an ALJ must be free to disregard self-serving statements that cannot be verified, and the ALJ's assessment of credibility must be given great weight." Hudson v. Bowen, 849 F.2d 433, 434 (9th Cir. 1988); see Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990)(stating that an ALJ assessing the credibility of a claimant's testimony that she attempted to file a prior application may "disregard self-serving statements if they are unsupported by objective evidence").

Plaintiff contends that by acknowledging that he "told the judge he had moved back home with Patricia, but he did not," the ALJ "explicitly confirmed" that plaintiff "did not live at his wife's residence during the relevant time frame," and that having "confirmed" the truth of that fact, the ALJ "punished" plaintiff for his past behavior regarding child support payments by "unfairly" denying SSI benefits. [JS 4 (underscore in original)].

Plaintiff's contentions are baseless. When the ALJ said that plaintiff "told the judge he had moved back home with Patricia but he did not," he was merely summarizing plaintiff's testimony, not endorsing its truthfulness. [AR 15-16]. The argument that the ALJ "confirmed" that plaintiff did not move back in with his wife seems based on a careless—if not deliberate—misreading of the record.  As the ALJ made abundantly clear, he did not accept at face value plaintiff's self-serving testimony about his living arrangements. The ALJ reasoned that plaintiff "cannot have it both ways[;] either he has lived in the family home, or he has not, as he now asserts.  The claimant testified at the hearing before me that he did not tell the truth to Judge Anderson. Based on his admitted representation to Judge Anderson, I am not inclined to believe the claimant." [AR 16].   Even if the ALJ could not be certain whether plaintiff lied to Judge Anderson or was lying to him, he was justified in concluding that plaintiff's willingness to lie either to him

1  or to Judge Anderson damaged plaintiff's "reputation for truthfulness" and revealed a lack of candor that

2  reflected poorly on his credibility as a whole. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir.

3  1997)(stating that "[i]n weighing a claimant's crediblity, the ALJ may consider [the claimant's] reputation

4  for truthfulness," among other things);  Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(stating that

5  the ALJ may employ "ordinary techniques of credibility evaluation," and may take into account such factors

6  as whether "a claimant has a reputation as a liar," or "is found to have been less than candid in other aspects

7  of his testimony").[1]

8         The additional evidence cited by the ALJ and the Appeals Council, such as plaintiff's 2004, 2005,

9  and 2006 telephone directory listings, the January 2007 rental agreement with Ms. Watson, February 2007

10  letter from Ms. Watson, and plaintiff's January 25, 2007 filing of a divorce petition, either failed to

11  corroborate plaintiff's self-serving testimony or tended to contradict it. See Hudson, 849 F.2d at 435

12  (holding that the ALJ permissibly "relied to a large extent, although not entirely, on the lack of any objective

13  evidence" corroborating the claimant's testimony that he no longer had excess resources because he spent

14  $4000 gambling in Reno, and on inconsistent statements the claimant made about the number of trips he

15  took to Reno).

16         For all of these reasons, the Commissioner's credibility finding was supported by substantial

17  evidence and was free of legal error.

18  _____

19         [1]    Plaintiff's argument that it would be "unfair" for the ALJ or this Court to deny plaintiff SSI
   benefits for the relevant period on account of an avowedly calculated, intentional misrepresentation
20  under oath or affirmation to a state court judge, who relied on that misrepresentation to grant
   plaintiff the relief he sought, signals a lack of respect for the integrity of the judicial process.
21  Beyond that, the possibility that plaintiff might prevail in this case by taking a factual position
   contrary to the one he successfully asserted in state court appears to implicate the principle of
22  judicial estoppel, which is  "an equitable doctrine that precludes a party from gaining an advantage
   by asserting one position, and then later seeking an advantage by taking a clearly inconsistent
23  position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir.2001); see, e.g.,
   Rowland v. Astrue, 2009 WL 1704358, at *1 n.2 (C. D. Cal. 2009)(suggesting that the doctrine of
24  judicial estoppel applied, but declining to rule on the issue)(citing Hamilton, 270 F.3d at 782);
   Capsopoulos ex rel. Capsopoulos v. Chater, 1996 WL 717456, at *1-*4 (N. D. Ill. 1996)(explaining
25  that the doctrine of judicial estoppel applies "where self-interest rather than truth determine[s] the
   argument of the day," and that its "purpose is to 'protect the courts from being manipulated by
26  chameleonic litigants who seek to prevail, twice, on opposite theories,'"and applying the doctrine
   as a matter of discretion to affirm the Commissioner's denial of benefits, even though the
27  Commissioner did not do so)(quoting Maitland v. Univ. of Minnesota, 43 F.3d 357, 363 (8th Cir.
28  1994)).

**Development of the record**

Plaintiff contends that the ALJ had "doubts about the truthfulness of" plaintiff's testimony regarding his residence between September 1, 2005 and January 31, 2007, yet failed to fully and fairly develop the record regarding that issue, and instead "based his decision on his disapproval of the plaintiff's past actions and behavior." [See JS 11-14].

The ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006)(quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)(per curiam) and Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983)). When a claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.  The ALJ must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981)(quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).  The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001).

The ALJ's doubts about the reliability of plaintiff's testimony did not arise because the record was too sparse or too ambiguous to allow him to make a reasoned determination, as plaintiff suggests, but rather because the record contained substantial evidence indicating that plaintiff was not a credible witness.  The record, moreover, was adequately developed. During the hearing, the ALJ queried plaintiff as to whether he wished to proceed without a representative.  He summarized the procedural posture of the case and the issues before him.  He asked plaintiff both specific and open-ended  questions seeking to elicit any additional information plaintiff might wish to offer.  The ALJ gave plaintiff the option of submitting additional exhibits after the hearing.  Plaintiff submitted additional documentary evidence to the Appeals Council, which considered that evidence, made it a part of the record, and issued a new decision incorporating the ALJ's analysis of the evidence and findings. [See AR 121-156, 157-159, 160-190]. Accordingly, there is no merit to plaintiff's argument that the record was not fully and fairly developed. Cf. Hudson, 849 F.2d at 435 (holding that the record did not support the claimant's assertion that a remand was required because "he was never given the opportunity to fully present evidence" that his excess

resources were spent on living expenses, and observing that plaintiff "would simply like a second opportunity" but had no entitlement to a remand where the denial of benefits was based on substantial evidence).

**Conclusion**

The Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

November 5, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge